UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
**CENTRAL DIVISION at LEXINGTON**

| | | |
|---|---|---|
| CLIFTON B. DAVIDSON and<br>ALFRED L. JENNINGS, | ) | |
| | ) | |
| Plaintiffs, | ) | Civil No. 5: 15-351-JMH |
| | ) | |
| V. | ) | |
| | ) | |
| FEDERAL BUREAU OF PRISONS, | ) | **MEMORANDUM OPINION** |
| | ) | **AND ORDER** |
| Defendant. | ) | |

**** **** **** ****

This matter is before the Court upon the motion of the Bureau of Prisons ("BOP") to dismiss the complaint, or in the alternative, for summary judgment. [R. 20] Plaintiffs Clifton Davidson and Alfred Jennings have filed their response to the motion, to which the BOP has replied. [R. 34, 38] The plaintiffs also filed a motion to strike the declaration of Alex White, a request which has been fully briefed. [R. 32, 37, 39] The plaintiffs separately filed a motion to amend their complaint, and the parties have concluded their briefing on this motion as well. [R. 46, 49, 51] These matters are therefore ripe for decision.

**I**

When they filed their complaint in this action, Davidson and Jennings were both prisoners at the Federal Medical Center in Lexington, Kentucky ("FMC-Lexington"), although Jennings was released from federal custody in October 2016. [R. 45] The

gravamen of their complaint is that the BOP poorly administers or misappropriates funds that are supposed to be used to benefit inmates. [R. 1 at ¶¶10-83] They also assert two satellite claims arising from their dissatisfaction with the BOP's handling of their inmate grievances on the subject [R. 1 at ¶¶84-153], as well as the BOP's response to one of seven requests for documents Davidson made under the Freedom of Information Act, 5 U.S.C. § 552a ("FOIA") [R. 1 at ¶¶ 154-164]. The plaintiffs seek monetary damages and costs, as well as declaratory and injunctive relief. [R. 1 at 25-26]

Davidson and Jennings assert that as federal inmates they are beneficiaries of two trust funds administered by the BOP: the "Deposit Fund," which holds money deposited for use by individual inmates (basically, a "checking account" for each inmate), and the "Trust Fund," which, among other things, holds proceeds from the sale of items sold in the prison's commissary. See BOP Program Statement 4500.11, CN-1 Ch. 1, § 1.1 (Dec. 16, 2016). This case involves only the latter, commonly referred to as the Commissary Fund. The plaintiffs allege that these funds are used to pay the salaries of certain prison guards and compensation to some of the inmates working prison jobs; to buy recreational, entertainment, and computer equipment in the facility for use by both guards and prisoners; and to sponsor certain educational programs and interior improvements to the facility.

2

However, plaintiffs complain that prison guards regularly receive pay increases while inmate pay has remained stagnant for decades, and starting in December 2014, the regular and "bonus" pay for inmates was reduced significantly.  They also state that prices for goods in the commissary continue to increase; the BOP does not take care of the equipment purchased for inmates and discards good equipment; and the BOP has used some funds exclusively for the benefit of prison guards.  Finally, Jennings and Davidson allege that prison wardens sometimes transfer trust funds from their institution to other facilities or regions in an effort to curry favor and increase their chances at promotion. [R. 1 at 3-10, 18-19]

The plaintiffs assert several claims related to the trust fund.  First, in Counts Two and Six Jennings and Davidson separately assert that the reduction in their compensation from their inmate jobs violates their due process rights.  Second, in Count Four they collectively assert that the BOP violates its duties as a trustee by using trust funds mostly to benefit staff members instead of inmates. Third, in Counts One and Five Jennings and Davidson each contend that the transfer of funds to other prisons is an abuse of trustee discretion.  [R. 1 at p. 20-23]

Upset about this state of affairs, each plaintiff filed separate inmate grievances about the reduction in their pay and the running of these funds, but the grievance process only

frustrated Davidson and Jennings further. The BOP's administrative remedy program requires inmates to first attempt to resolve their concerns informally, but the plaintiffs felt that prison officials only gave them the runaround. Davidson and Jennings further complain that their formal grievances and appeals were not received until several weeks after they sent them for filing, were improperly rejected as untimely or for failure to include a copy of the decision appealed from, and were not addressed by the BOP within the time frames established by its own regulations. Plaintiffs assert that as a result of these circumstances inmates incur extra costs for postage and office supplies as well as uncertainty regarding when they may proceed to file suit. [R. 1 at p. 10-18] In Counts Three and Seven, Jennings and Davidson contend that the BOP's failure to adhere to the requirements of the inmate grievance process violates their due process rights. [R. 1 at p. 22, 23-24]

Davidson also filed a request under the Freedom of Information Act for documents detailing how the BOP uses these funds. While he states that he received almost all of what he asked for, he found incredible the BOP's response that no documents exist to confirm his belief that inmate trust funds were used to improve the dining area used by staff at FMC - Lexington. Davidson filed an appeal regarding this omission, but states that he never received a response. [R. 1 at 19-20] In Count Eight, Davidson

4

contends that the BOP violated FOIA by failing to produce documents he believes exist, but the BOP has stated do not. [R. 1 at p. 24-25]

Because the plaintiffs mention it in their response to the summary judgment motion [R. 34 at 6], the Court pauses here to address the one-sentence suggestion in their complaint that they wished to have this matter proceed as a class action. [R. 1 at 25] In their complaint, the plaintiffs did not attempt to define the scope of the class or the claims encompassed within it, allege or argue that they satisfy the requirements for class certification set forth in Federal Rule of Civil Procedure 23(a)(1)-(4), or identify the type of class action appropriate under Rule 23(b)(1)-(3). A complaint that fails to satisfy either one of these substantive criteria does not warrant class certification. See *Wal–Mart v. Dukes*, 564 U.S. 338, 350 (2011) ("Rule 23 does not set forth a mere pleading standard."); *Newsom v. Norris*, 888 F. 2d 371, 381 (6th Cir. 1989). As a procedural matter, they also never filed a formal motion for such certification. *Moore v. Curtis*, 68 F. App'x 561, 563 (6th Cir. 2003). This matter could not have proceeded as a class action in any event: *pro se* plaintiffs are not able to adequately and fairly represent the class. Cf. *Palasty v. Hawk*, 15 F. App'x 197, 200 (6th Cir. 2001). The Court therefore limits its discussion to the claims asserted by Davidson and Jennings.

## II

In its motion for summary judgment, the BOP contends that neither plaintiff properly exhausted his administrative remedies with respect to his claims, whether under the BOP's internal Inmate Grievance Program or under FOIA. [R. 20-1 at 3-8; 9-10] It also notes that, as a federal agency, it is entitled to sovereign immunity from damages claims [R. 20-1 at 8-9] and that prisoners have no constitutional right to either a prison job or any wages for their work [R. 20-1 at 9]. Finally, the BOP requests summary judgment on Davidson's FOIA claim because it conducted a reasonable search for the records he sought and discovered none. [R. 20-1 at 10-12]

For their part, Jennings and Davidson assert pursuant to Federal Rule of Civil Procedure 56(d) that discovery is necessary before they can respond to the BOP's motion. They also dispute the BOP's characterization of their claims and deny that they have sought monetary relief, while nonetheless contending the BOP has waived its immunity to a damages claim. [R. 34 at 2-7; 21-34] Their primary contention is that they have exhausted their administrative remedies, and that any untimeliness or irregularity in the processing of their inmate grievances was caused by the BOP's failure to adhere to its own regulations. [R. 34 at 7-20; 35-44] Finally, Davidson asserts that the FOIA search must have

6

been unreasonable because a reasonable search would necessarily have revealed the documents he is certain exist.   [R. 34 at 45-48]

Before addressing the substance of the BOP's motion, the Court must first resolve two preliminary matters.   First, the parties dispute the nature of Jennings and Davidson's claims and the relief they seek.   The BOP characterizes Counts One, Two, Four, and Five of the plaintiffs' complaint as asserting due process claims arising out of a reduction in their pay; and Counts Five, Six, and Seven as due process claims related to the BOP's administration of its inmate grievance program.   It also notes Davidson's FOIA claim in Count Eight, but makes no attempt to characterize Count Three. [R. 20-1 at 2-3]   For their part, the plaintiffs suggest that their only due process claim relates to the inmate grievance program, and that their "claims brought regarding the Trust Fund (and including pay from the Trust Fund) are brought under trust law and not as a strictly-speaking Constitutional claim."   [R. 34 at 4-5, 21, 23]

Atypical for most *pro se* complaints, the plaintiffs' complaint is extensive, detailed, and for the most part, fairly precise.   It also establishes that neither party accurately characterizes the claims Jennings and Davidson assert in their complaint.   As noted by the Court above, five of the counts are directly related to the operation of the trust fund and/or their

7

inmate pay.  Counts Two and Six  - expressly titled "Violation of Due Process as to Jennings (Pay)" and "Violation of Due Process as to Davidson (Pay)" respectively - assert that each of the plaintiffs possessed a "protected property interest in his pay" and that the "BOP has violated the due process rights" of the plaintiffs by reducing their pay.  These claims are also devoid of any suggestion that the BOP's conduct violated its duties as a trustee, a type of claim the plaintiffs clearly and expressly assert in other counts.  [R. 1 at 20-21, 23]  The foregoing refutes the plaintiffs' assertion that these counts assert claims under trust law and the BOP's assertion that Count Six relates to the inmate grievance program.

Unlike those two counts, Count Four is entitled "Breach of Trust Fund Duties (Both Plaintiffs)," refers to the law of trusts, alleges that the trust funds are being used to benefit BOP staff rather than inmates, and contends that these actions are a violation of the discretion afforded to the trustee.  [R. 1 at 22-23]  This claim arises solely under trust law.

Counts One and Five are more ambiguous.  In each, the plaintiffs allege that "the taking of his pay was not a measure in accord with due process ..."  However, each count is titled as "Violations of Trust Fund ...," a clear contrast to counts expressly identified as due process claims, and they conclude with the assertion that the BOP actions are "a breach of the trust and

an abuse of [trustee] discretion ..." [R. 1 at p. 20-21, 23]   In light of the express labelling chosen by the plaintiffs and their focus on the alleged breach of trustee duties, these counts assert claims arising, if at all, under trust law.

The parties appear to be in agreement that Counts Three and Seven assert due process claims regarding the BOP's operation of the inmate grievance program, and that Count Eight encapsulates Davidson's FOIA claim.   The nature of these claims is readily apparent from the complaint itself.  [R. 1 at p. 22, 23-25]

As a separate matter, although the plaintiffs' protest that they "do not seek money damages from anyone" in response to the BOP's assertion of sovereign immunity [R. 34 at 4-5], the complaint contradicts that assertion, as it expressly includes a demand for "[a]ctual and compensatory damages to both plaintiffs ..." [R. 1 at 26], a clear request for monetary relief.   Notably, the plaintiffs also request injunctive relief, a remedy that – depending upon the nature of the relief sought – does not necessarily implicate the federal government's sovereign immunity. These matters are discussed more fully below.

Having established the nature of the claims Davidson and Jennings actually assert, the Court must next address Davidson's contention that he needs discovery (albeit only with respect to his FOIA claim) before the Court decides the BOP's motion for summary judgment.  [R. 34 at 2-3]   The Federal Rules of Civil

Procedure permit a party resisting a summary judgment motion to request that the Court defer a decision on the motion if she can demonstrate, by affidavit or declaration, that she needs limited discovery to obtain certain specific facts to justify her opposition to the motion. Fed. R. Civ. P. 56(d). Davidson's request, however, fails on both procedural and substantive grounds.

Procedurally, the Rule requires the nonmovant to file an affidavit or declaration to assert and explain that it needs additional discovery. Davidson incorporated his request for discovery into his response to the BOP's summary judgment motion, but he filed no affidavit or declaration in support of it. The plaintiffs filed numerous affidavits in support of their claims [R. 34-5], but none of those - including Davidson's fourteen page affidavit [R. 34-5 at 11-24] - assert the need for additional discovery. Because Davidson did not file an affidavit or declaration which "indicate[s] to the district court [the party's] need for discovery, what material facts it hopes to uncover, and why it has not previously discovered the information," *Cacevic v. City of Hazel Park*, 226 F.3d 483, 488 (6th Cir. 2000), he has failed to properly invoke Rule 56(d).

Substantively, Davidson bears the burden of demonstrating why discovery is necessary. *Summers v. Leis*, 368 F.3d 881, 887 (6th Cir. 2004). The nonmovant must do more than make "general and

conclusory statements ... regarding the need for more discovery"; instead, she must "show how an extension of time would have allowed information related to the truth or falsity of the [document] to be discovered." *Ball v. Union Carbide Corp.*, 385 F.3d 713, 720 (6th Cir. 2004) (citing *Ironside v. Simi Valley Hosp.*, 188 F.3d 350, 354 (6th Cir. 1999)).

Here, the BOP has moved to dismiss Davidson's FOIA claim on the grounds that he failed to fully and properly exhaust it and because its search for documents was reasonable. [R. 20-1 at 7-8, 10-12] Davidson appears to seek "records" – which he does not clearly define by date range, scope, source, or subject matter – that he contends are required to be kept by unidentified BOP budgeting policies, and which the BOP has previously stated it was unable to locate. Even if these documents do exist, they would not be required for Davidson to respond to the BOP's motion, because the contents of these documents would not make it any more or less likely that he exhausted his administrative remedies under FOIA or that the BOP's search conducted at his behest was not reasonable. And a continuance for discovery is not necessary to respond to purely legal arguments where the controlling facts are not in dispute. Cf. *Teck Metals, Ltd. v. Certain Underwriters at Lloyd's, London*, 735 F.Supp.2d 1246, 1256 (E.D. Wash. 2010). The Court may therefore proceed to consider the substance of the BOP's

motion as it relates to Davidson's FOIA claim alongside its consideration of the balance of the plaintiffs' claims.

III

The Court must treat the non-jurisdictional aspects of the BOP's motion to dismiss the complaint as a motion for summary judgment under Rule 56 because it has attached and relied upon documents and declarations extrinsic to the pleadings in support of it. Fed. R. Civ. P. 12(d); *Wysocki v. Int'l Bus. Mach. Corp.*, 607 F. 3d 1102, 1104 (6th Cir. 2010). A motion under Rule 56 challenges the viability of the another party's claim by asserting that at least one essential element of that claim is not supported by legally-sufficient evidence. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 324-25 (1986). A party moving for summary judgment must establish that even viewing the record in the light most favorable to the nonmovant, there is no genuine dispute as to any material fact and that she is entitled to a judgment as a matter of law. *Loyd v. St. Joseph Mercy Oakland*, 766 F. 3d 580, 588 (6th Cir. 2014).

The moving party does not need her own evidence to support this assertion, but need only point to the absence of evidence to support the claim. *Turner v. City of Taylor*, 412 F. 3d 629, 638 (6th Cir. 2005). The responding party cannot rely upon allegations in the pleadings, but must point to evidence of record in affidavits, depositions, and written discovery which demonstrates

that a factual question remain for trial. *Hunley v. DuPont Auto*, 341 F. 3d 491, 496 (6th Cir. 2003); *United States v. WRW Corp.*, 986 F. 2d 138, 143 (6th Cir. 1993) ("A trial court is not required to speculate on which portion of the record the non-moving party relies, nor is there an obligation to 'wade through' the record for specific facts.").

The court reviews all of the evidence presented by the parties in a light most favorable to the responding party, with the benefit of any reasonable factual inferences which can be drawn in his favor. *Harbin-Bey v. Rutter*, 420 F. 3d 571, 575 (6th Cir. 2005). If the responding party's allegations are so clearly contradicted by the record that no reasonable jury could adopt them, the court need not accept them when determining whether summary judgment is warranted. *Scott v. Harris*, 550 U.S. 372, 380 (2007). The court must grant summary judgment if the evidence would not support a jury verdict for the responding party with respect to at least one essential element of his claim. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251 (1986). If the applicable substantive law requires the responding party to meet a higher burden of proof, his evidence must be sufficient to sustain a jury's verdict in his favor in light of that heightened burden of proof at trial. *Harvey v. Hollenback*, 113 F. 3d 639, 642 (6th Cir. 1997); *Moore, Owen, Thomas & Co. v. Coffey*, 992 F. 2d 1439, 1444 (6th Cir. 1993).

**A**

The Court first addresses the BOP's assertion that Jennings and Davidson failed to exhaust their administrative remedies with respect to any of their claims, and hence they must be dismissed. [R. 20-1 at 3-8] Federal law requires a prisoner challenging the conditions of his confinement pursuant to 42 U.S.C. 1983, *Bivens*, or other federal law to properly exhaust all available administrative remedies before filing suit in federal court. 42 U.S.C. § 1997e(a); *Porter v. Nussle*, 534 U.S. 516, 532 (2002); *Napier v. Laurel County*, 636 F.3d 218, 220 (6th Cir. 2011). Claims that are not fully and properly exhausted before suit is filed must be dismissed. *Jones v. Bock*, 549 U.S. 199, 211 (2007) ("There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court.").

The prisoner must exhaust those remedies "properly," meaning in full compliance with the agency's deadlines and other critical procedural rules. *Woodford v. Ngo*, 548 U.S. 81, 90 (2006); *Scott v. Ambani*, 577 F.3d 642, 647 (6th Cir. 2009). If a prisoner's grievance or appeal is rejected on procedural grounds and he is afforded the opportunity to cure the defect that led to the rejection, the prisoner must avail himself of that opportunity: he may not abandon further efforts at compliance. *Hartsfield v. Vidor*, 199 F.3d 305, 309 (6th Cir. 1999) ("An inmate cannot simply fail to file a grievance or abandon the process before completion and claim that he has exhausted his remedies or that it is futile

14

for him to do so."); *Jernigan v. Stuchell*, 304 F.3d 1030, 1032-33
(10th Cir. 2002) (inmate failed to exhaust administrative remedies
when he failed to cure the deficiency which led the prison to
reject grievance appeal).

**1.**

Jennings filed only one grievance related to this case.  On
February 18, 2015, Jennings filed a grievance with the warden
complaining that his pay had been cut during the prior fall and
requesting return to his prior pay grade.  Jennings attached to
his grievance a copy of a December 22, 2014, e-mail that he had
sent to an assistant warden complaining about the reduction in his
pay.  [R. 34-3 at 21-22]  Jennings grievance was assigned number
811241, and on February 20, 2015, was rejected on the ground that
it was filed more than twenty days after the events complained of.
[R. 34-3 at 23]

On March 10, 2015, Jennings appealed to the BOP's Mid-Atlantic
Regional Office ("MARO").  [R. 34-3 at 24-26]  Jennings' appeal
was rejected by MARO on March 18, 2015, because it was not received
until March 17, 2015, five days after the time permitted to appeal
had passed, and because he had not included copies of his formal
grievance and the warden's response.  The rejection notice advised
Jennings that he could submit a note from staff to explain the
untimely filing to cure the deficiency that led to the rejection.
[R. 34-3 at 27]

15

Jennings chose not to do so, instead challenging MARO's rejection on appeal to the Central Office on March 29, 2015. [R. 34-3 at 28-29]  The Central Office rejected the appeal on May 18, 2015, concluding that the warden and MARO properly rejected his grievance and the appeal as untimely. [R. 34-3 at 30]

Having reviewed the documents and arguments submitted by the parties, the Court concludes that Jennings did not properly exhaust his administrative remedies with respect to any of the four claims he asserts in Counts One through Four of the complaint.

Three of those claims are unexhausted because they are entirely unrelated to the subject matter of the one grievance Jennings filed with the warden.  To properly exhaust a claim, the inmate must identify the issue with sufficient particularity to permit prison officials a reasonable opportunity to address it. *Johnson v. Testman*, 380 F.3d 691, 697 (2d Cir. 2004).  In many cases, it is enough to identify the facts or events which have caused concern.  Conversely, an inmate may not assert a claim wholly distinct, factually or legally, from the one presented to prison officials during the grievance process. *Pruitt v.* Holland, No. 10-CV-111-HRW, 2011 WL 13653, at *4-6 (E.D. Ky. Jan. 4, 2011) (collecting cases).

In his only grievance, Jennings complained that his pay had been improperly reduced [R. 34-3 at 21-22], a complaint directly related to his claim in Count Two that such reduction violated his

16

due process rights [R. 1 at 21]. But his grievance did not set forth, or even touch upon, the other claims he asserts in this case. In Count Four, Jennings contends that trust funds are used to benefit staff instead of inmates, a wholly distinct claim based upon different facts, none of which were described in his grievance. In Count Three, he complains about the BOP's administration of the inmate grievance process, something not mentioned in the one grievance he filed with the warden. Jennings did complain about the warden's rejection of his grievance, but only did so for the first time in his appeal to MARO. He did not file a separate grievance with the warden regarding the administration of the grievance process, and an inmate may not skip steps in the grievance process by raising a new issue for the first time in an appeal to the regional or central offices. 28 C.F.R. § 542.15(b)(2) ("An inmate may not raise in an Appeal issues not raised in the lower level filings."). In Count One, Jennings argues that the BOP abuses its discretion as a trustee if it transfers funds to other prisons, also a matter not mentioned in his February 2015 grievance. Because Jennings' claims in Counts One, Three and Four are wholly distinct from the subject of his grievance, they are unexhausted and must be dismissed.[1]

---

[1] Even if this were not so, Jennings sought injunctive relief in these claims, a request rendered moot by his release from BOP

Jennings' claim in Count Two related to his inmate pay was plainly covered by the grievance he filed, but the BOP acted properly in rejecting it as untimely at both the institutional and regional levels.  In that grievance, Jennings challenged the reduction in his inmate pay, and specifically pointed to an e-mail he sent on December 22, 2014, complaining to an assistant warden about the pay cut.  [R. 34-3 at 21-22]  Jennings later made a passing argument that another statement he made in his grievance, that "continuing every month, my pay has been cut ...," suggested that events had occurred within the twenty-day filing period.  But having referenced a discrete pay cut in December, this statement is fairly viewed as merely referring to the ongoing effects of the policy change which occurred in 2014.  His grievance, filed in mid-February 2015, was plainly filed well beyond the twenty days permitted by 28 C.F.R. § 543.14(a), and the warden properly rejected it as untimely.

His appeal to MARO was also untimely.  The warden rejected Jennings' grievance on February 20, 2015, and his appeal therefore had to be *received* by MARO within twenty days, by March 12, 2015. 28 C.F.R. § 542.15(a).  Jennings waited eighteen days - until March

---

custody in October 2016.  [R. 45]; *Holson v. Good*, 579 F. App'x 363, 366 (6th Cir. 2014); *Nunez v. FCI-Elkton*, 32 F. App'x 724, 726 (6th Cir. 2002).

10, 2015, two days before the deadline - before he signed his appeal.   MARO did not receive it until March 17, 2015, and therefore properly rejected it as untimely.   [R. 34-3 at 25-27]

The plaintiffs complain throughout their response that grievances and appeals should not take so long to be received. But inmates are well aware that mail sent from a prison spends much more time in transit than ordinary mail because it has to be processed by jail staff before mailing, transported to its destination, and then passed through security screening before it is finally received.   It is this fact which at least partially animated the adoption of the "prison mailbox" rule decades ago, *Houston v. Lack*, 487 U.S. 266, 271-72 (1988), and the BOP's filing and appeal deadlines "have been made deliberately long to allow sufficient mail time."   BOP Program Statement 1330.18, § 9(a) (Jan. 6, 2014).   Indeed, the federal prison where plaintiffs reside is a mere six miles from the federal courthouse in Lexington, but a review of the docket in this case readily shows that mail sent from that facility routinely takes two to four days to be received. It is unsurprising that Jennings appeal to MARO, which is located in Maryland, should take much longer than that.   Because Jennings' appeal was untimely and he refused the opportunity to address that deficiency, the claim asserted in Count Two is likewise unexhausted and must be dismissed. *Hartsfield*, 199 F.3d at 309.

**2.**

For his part, Davidson filed five inmate grievances related to the issues he presents in this case. In the first, Davidson signed a grievance raising concerns regarding the changes to inmate pay and the processing of grievances on December 31, 2014. The BOP assigned number 806609 to that grievance, but promptly rejected it because Davidson had attached too many continuation pages. [R. 20-2 at 2; R. 34-2 at 1-3, 5]

On January 22, 2015, Davidson resubmitted the grievance with only a single continuation page [R. 34-2 at 6], and the BOP assigned number 808079 to it. On January 27, 2015, the warden granted that grievance insofar as Davidson sought information about the changes to inmate pay, but directed him to appeal if he was not satisfied with the response. [R. 20-2 at 24-27]

Davidson appears to have mailed his appeal to MARO on February 3, 2015 [R. 34-2 at 12-14], but the regional office rejected it on March 10, 2015, on the grounds that Davidson had not included a copy of the grievance he filed with the warden or the warden's response.[2] [R. 34-2 at 15] Davidson re-filed his appeal a week

---

[2] In its motion, the BOP asserts that Davidson's appeal was filed on March 10th and that MARO rejected it as untimely. [R. 20-1 at 4; R. 20-2 at 2] These assertions are incorrect.

First, the BOP's "generalized retrieval" page – which provides limited information about the subject matter of the grievance (but

later, contending that the documents which MARO had indicated were missing were actually in his original appeal. [R. 34-2 at 16] MARO accepted Davidson's re-submitted appeal, and denied it on May 4, 2015. [R. 34-2 at 18]

Because MARO had not responded to his regional appeal by its self-identified April 22, 2015 deadline to do so [R. 34-2 at 17], and before MARO issued its May 4 decision, Davidson sent an appeal to the Central Office on May 1, 2015. [R. 34-2 at 19-20] On July 6, 2015, the Central Office indicated that it had received Davidson's appeal on June 16, 2015 (six weeks after he sent it), rejected the appeal on the ground that he had not included a copy of either his appeal to MARO or the regional office's response to it, and directed him to resubmit the appeal within fifteen days with the required documentation.[3] [R. 34-2 at 21]

---

does not include a copy of the grievance itself) and the dates of its filing and disposition - shows that MARO received Davidson's appeal on March 4, 2015, not March 10, 2015. [R. 20-2 at 22] This fact is confirmed by the file-stamped copy of the appeal filed by Davidson. [R. 34-2 at 13]

Second, the "generalized retrieval" page submitted by the BOP will show that a grievance or appeal was rejected, but that page does not provide any information about why that occurred. The BOP does not explain the basis for its assertion that the appeal was rejected as untimely, the document cited for that assertion does not support it, and the document filed by Davidson demonstrates otherwise. [R. 34-2 at 15]

[3] The BOP asserts that the Central Office appeal was rejected as untimely [R. 20-2 at 3], but as before, the SENTRY retrieval

Davidson has attached a letter to the Central Office dated July 21, 2015, which stated that he was re-sending the documents required to cure the deficiencies which led to the rejection of the appeal.  [R. 34-2 at 23]  Notably, however, the BOP's SENTRY report does not indicate that the Central Office received this or any further submissions from Davidson regarding this appeal [R. 20-2 at 22-23], and Davidson does not indicate that he pursued the matter any further in the face of silence from the Central Office [R. 34 at 13].

Davidson's second grievance, signed on April 22, 2015 and formally received by the warden on May 6, 2015, requested that (1) trust funds be used to purchase higher quality and more durable exercise equipment, (2) telephones for inmate use be repaired more quickly, and (3) a committee be established.  The grievance was assigned grievance number 820130.  [R. 34-2 at 24]  The warden responded on May 22, 2015, by providing information regarding the purchase of new exercise equipment and the administration of the trust fund, but denied the grievance for administrative purposes. [R. 34-2 at 26]  Davidson filed an appeal to MARO on June 1, 2015; MARO denied the appeal as moot on June 25, 2015, in light of the

---

[R. 20-2 at 22] does not support that assertion and it is contradicted by the actual rejection notice filed by Davidson [R. 34-2 at 21].

purchase of new equipment and a work order to repair broken telephones.  [R. 34-2 at 27-28; R. 34-3 at 1]

Davidson has included a cover letter and appeal to the Central Office dated July 8, 2015.  [R. 34-3 at 2-4]  However, he indicates that the Postal Service's Mail Recovery Center in Atlanta, Georgia returned them to him on August 7, 2015, without an explanation for their non-delivery, and has included an envelope from the Mail Recovery Center.  [R. 34 at 14; R. 34-3 at 5]  Davidson indicates that he then sent all of these materials to the Central Office with an explanation for the delay on August 8, 2015.  [R. 34-3 at 6]  The Central Office received these materials two weeks later, and on September 14, 2016, rejected the appeal materials as untimely.  However, the Central Office directed Davidson to provide staff verification that the delay was not his fault.  On September 24, 2015, Davidson states that he sent the Central Office a memorandum by a BOP staff member who indicated that the mailing labels on the envelope returned by the Postal Service appear to have been "severely blackened."  [R. 34-3 at 7-10]  Davidson indicates that he never heard back from the Central Office.  [R. 34 at 14]  The BOP's SENTRY database does not reflect that it received this letter or any other filings from Davidson related to this appeal.  [R. 20-2 at 22-23]

Davidson filed his third grievance on July 8, 2015, complaining that inmate pay had remained unchanged since 1990 and requesting a fifteen percent pay increase for all inmates. This grievance was assigned number 827968, and the warden denied it on July 16, 2015. [R. 34-3 at 12, 14] Davidson appealed, but MARO denied the appeal on August 28, 2015. [R. 34-3 at 17-18] As with his other grievances, Davidson asserts that he promptly appealed to the Central Office on September 7, 2015. [R. 34 at 16; R. 34-3 at 19-20] Davidson indicates that he never received a response, but was apparently not sufficiently concerned with the Central Office's silence to enquire further. The BOP has no record of any appeal to the Central Office. [R. 20-2 at 22-23]

It is worth collecting in one place the factual allegations and implications that Davidson makes to support his assertion that he fully exhausted these first three administrative remedies:

1. With respect to his first grievance, Davidson asserts that he included copies of his original appeal and the warden's denial of it in his February 3, 2015, appeal to MARO, but MARO rejected the appeal either because it lost the documents or because it lied about their absence. He further asserts that he resubmitted his appeal to the Central Office on July 21, 2015, even though the BOP has no record of having received it.

2. With respect to his second grievance, Davidson asserts that his original appeal to the Central Office was never delivered by the Postal Service. He further asserts that he resubmitted his appeal to the Central Office in September 2015, but the Central Office again has no record of receiving it.

24

> 3.  With respect to his third grievance, Davidson asserts that he appealed to the Central Office in September 2015; as before, the BOP has no record of receiving it.

The Court would likely accept at face value a prisoner's assertion that the BOP lost a single grievance or appeal: no system is flawless or free from delays or errors in administration, and the BOP's inmate grievance system, with which the Court is abundantly familiar, is no exception.  However, the same prisoner's assertion that the BOP had simply lost not one, but two, grievances or appeals would appropriately be met with a healthy dose of skepticism.  The BOP processes a large number of administrative remedies, far more than many federal agencies, and has effective procedures in place to docket them, even if the sheer volume of inmate grievances causes significant delays in response times.

Here, Davidson claims that the BOP lost not one, not two, but all three of his Central Office appeals.  And while he has previously and keenly voiced his frustration with the delays he experienced when MARO and the Central Office processed his appeals, he was apparently unconcerned when he failed to receive any acknowledgement letter from the Central Office after he sent these appeals.  To put it mildly, these assertions collectively strain credibility.

However, credibility determinations are generally not made in the context of a summary judgment motion. It is true that a court may grant summary judgment if the responding party's allegations are so clearly contradicted by the record that no reasonable jury could adopt them. *Scott v. Harris*, 550 U.S. 372, 380 (2007). Here, Davidson has supported his assertions with copies of letters that he claims were sent to the Central Office to perfect his appeals. This places the BOP in the unenviable position of having to prove a negative – that Davidson never sent them. The best it can muster is to point out that Davidson has not provided any documentary evidence that they were sent such as certified mail receipts, and that the BOP's SENTRY report unequivocally demonstrates that they were never received. While the matter presents a close question, the Court believes that there is not sufficiently clear evidence in the record at this juncture to determinatively conclude as a matter of law that Davidson failed to complete the appeal process with respect to these three grievances.

There is another issue with respect to exhaustion. In his complaint and in his response, Davidson notes that he filed a fourth and fifth grievance related to the BOP's inmate grievance program. [R. 1 at 15, 17] These were not mentioned in the BOP's motion nor addressed in its reply, but the Court will discuss them

26

here.  On May 15, 2015, Davidson filed a grievance directly with MARO expressing his dissatisfaction with that office's handling of his regional appeals.  In doing so, he invoked an exception to the general rule that inmate grievances must generally be filed first with the institution where the inmate is confined.  28 C.F.R. § 542.14(d)(5) provides that "... formal administrative remedy requests regarding initial decisions that did not originate with the Warden, or his/her staff, may be initially filed with the Bureau office which made the original decision, and appealed directly to the General Counsel."

Davidson states that MARO rejected the filing and directed him to re-file the grievance with the Central Office.  While he alleges that he did so, again referring to subsection (d)(5), Davidson indicates that he received no response.  On July 27, 2015, Davidson also filed a separate grievance directly with the Central Office complaining of its handling of his appeals; he indicates that he received no response.  [R. 34 at 18-19; R. 34-3 at 31-37]

The Court agrees with Davidson that under the regulation, it was permissible for him to lodge his complaints regarding the handling of his appeals by MARO and the Central Office directly with those offices.  In each instance, he was complaining of a decision made by someone outside the facility where he was confined, and the terms of Section 542.14(d)(5) contemplate an

appeal being filed with the BOP office that made the decision being challenged. Cf. *Rush v. Samuels*, 82 F. Supp. 3d 470, 481 (D.D.C. 2015) (citing *Sines v. Caley*, 563 F. App'x 631, 632 (10th Cir. 2014)). Although this subsection appears to have been added in June 2010, the applicable internal policy document, BOP Program Statement 1330.18, was last revised in January 2014, and still does not reflect the change in the law, likely causing staff at MARO and the Central Office to improperly reject or disregard his filings. Based upon the record before it, it appears that the issues raised in these grievances have been properly exhausted.

The final issue with respect to exhaustion is not an inmate grievance, but Davidson's request for documents under FOIA. On February 17, 2015, Davidson sent a letter to the BOP's FOIA Section in Washington, D.C., requesting seven categories of information. Davidson's sixth request, although presented in the form of an interrogatory, sought information that would indicate "whether any inmate trust funds are used to [fund] the officer's mess here at FMC/ADX Lexington." [R. 34-3 at 38-39] The FOIA Section responded by letter dated April 23, 2015, indicating that it had located 33 pages of documents responsive to his requests. However, the response noted that:

> BOP staff searched for responsive records to item number 6 of your request, through the stored directories from the Correctional Programs Division, Trust Fund Branch,

and Sallyport, where these records would be maintained
or stored, no records were found. There are no other
locations where this record would be stored that would
likely lead to the discovery of the record with a
reasonable amount of effort.

The letter advised him that if he wished to appeal, he must do so
in writing within sixty days by mailing the appeal to the
Department of Justice, Office of Information Policy ("OIP") at the
address provided.  [R. 34-3 at 45-46]

The OIP indicates that it received an appeal from Davidson on
September 3, 2015, long after the deadline to appeal had passed.
It was therefore denied as untimely pursuant to 28 C.F.R. § 16.8(a)
(2015).  [R. 20-3 at 2-3, 9-11]  As he did with respect to his
three Central Office appeals, Davidson alleges that he had mailed
a timely appeal to OIP on May 31, 2015, but that for the fourth
time, a federal agency inexplicably failed to receive it.  Davidson
further states that when he hadn't heard anything from OIP for
several months, on September 1, 2015, he sent them a letter
inquiring about his appeal along with a copy of original appeal.
[R. 34 at 19-20; R. 34-4 at 1-2]  As this document was the first
that OIP had received from Davidson, it treated it as his appeal
and denied as untimely.

Apart from asserting as a factual matter that he *mailed* a
timely FOIA appeal, Davidson makes no legal argument in opposition
to the BOP's motion, and does not contest the affidavit of OIP's

officer that it never *received* his appeal.  The plaintiff in a FOIA action bears the burden of demonstrating not merely that he mailed a request, but that the agency actually received it. *Tunchez v. U.S. Dep't of Justice*, 715 F. Supp. 2d 49, 53 (D.D.C. 2010).  In this regard, the Supreme Court has emphasized that in FOIA cases, courts generally accord government records and official conduct a presumption of legitimacy.  *U.S. Dep't of State v. Ray*, 502 U.S. 164, 179 (1991)).

Accordingly, the plaintiff does not demonstrate actual receipt merely by providing the Court with a copy of an appeal letter he claims to have mailed.  Instead, more specific and detailed information is required, such as a certified mail receipt showing delivery, tracking information, and the recipient's signature.  *Carter v. United States*, No. 1: 16-CV-530, 2016 WL 4382725, at * 4 (S.D. Ohio Aug. 16, 2016).  Without such evidence of actual receipt by the agency, a FOIA plaintiff fails to rebut presumptively-accurate government records indicating that no such documents were received, and the agency has satisfied its burden to demonstrate that the requester failed to exhaust administrative remedies.  *Id.*; see also *Willis v. U.S. Dept. of Justice*, 581 F. Supp. 2d 57, 68 (D.D.C. 2008) (granting summary judgment where plaintiff's "bare assertion" that he sent FOIA requests was insufficient to overcome presumption of good faith that attached

to official's affidavit that no request was received).  The Court will therefore dismiss Davidson's FOIA claim for failure to exhaust administrative remedies.

**B**

Independent of its prior determinations regarding exhaustion of administrative remedies, the Court will address the BOP's arguments regarding the substance of the plaintiffs' claims.

**1.**

FOIA was designed "to facilitate public access to Government documents." *United States Dep't of State v. Ray*, 502 U.S. 164, 173 (1991).  If a citizen seeks documents that are "reasonably described" in a request, FOIA requires an agency to make them "promptly available."  5 U.S.C. § 552(a)(3).  A court reviews an agency's response to a FOIA request de novo.  5 U.S.C. § 552(a)(4)(B); *Jones v. F.B.I.*, 41 F.3d 238, 242 (6th Cir. 1994).

Where, as here, the agency seeks summary judgment on the ground that it fully disclosed documents in response to a FOIA request, the agency "must demonstrate that it has conducted a search reasonably calculated to uncover all relevant documents." *Steinberg v. United States Dep't of Justice*, 23 F.3d 548, 551 (D.C. Cir. 1994).  The issue is not whether there might be more documents, but whether the search was adequate. *Kowalczyk v. Dep't of Justice*, 73 F.3d 386, 388 (D.C. Cir. 1996).  A search is

presumptively adequate if the agency used "methods which can be reasonably expected to produce the information requested." *Oglesby v. U.S. Dept. of the Army*, 920 F.2d 57, 68 (D.C. Cir. 1990). At the summary judgment phase, the adequacy of the search can be established by affidavits, which are afforded a presumption of good faith. *Defenders of Wildlife v. U.S. Dep't of Interior*, 314 F. Supp. 2d 1, 8 (D.D.C. 2004).

The BOP has submitted the affidavit of Alex White, a Government Information Specialist in the BOP's FOIA section. White has extensive experience with FOIA and the Justice Department's regulations applicable to FOIA requests. [R. 20-3 at 1-2] White prepared the BOP's April 2015 response to Davidson's FOIA request, which described the numerous locations and nature of the documents searched for by BOP staff and noted that no documents responsive to Davidson's sixth request were located. In his affidavit, White further stated that in follow-up correspondence, the BOP's Trust Fund Branch indicated that trust funds are not used to improve staff dining rooms at any BOP facility. [R. 20-3 at 3]

Before discussing the substance of Davidson's FOIA claim, the Court must address his motion to strike White's affidavit. Davidson contends that White's affidavit is not based upon personal knowledge because while he described the outcome of the search conducted by BOP staff, he was not personally involved in the

search itself.  [R. 32]  But in a FOIA action, the question is not the substance of the documents found, but the reasonableness of the search itself.  *Kowalczyk*, 73 F.3d at 388.  Therefore, the BOP is correct that "the personal knowledge requirement is met where a declarant has personal knowledge of the procedures used in handling the request and familiarity with the documents at issue."  *American Mgt. Svcs., LLC v. Dept. of the Army*, 842 F.Supp.2d 859, 866 (E.D. Va. 2012); see also *Russell v. U.S. Dept. of State*, 651 F. App'x 667 (9th Cir. 2016) ("an affidavit from an agency employee responsible for supervising a FOIA search is all that is needed to satisfy the personal knowledge requirement of Federal Rule of Civil Procedure 56.").  White's affidavit therefore satisfies the personal knowledge requirement in this FOIA action, and Davidson's motion to strike it will be denied.

Here, White's affidavit establishes that the BOP's search was adequate.  FOIA simply requires the agency to "make a good faith effort to conduct a search for the requested records using methods reasonably expected to produce the requested information."  *Rugiero v. U.S. Dep't of Justice*, 257 F.3d 534, 547 (6th Cir. 2001).  Where the agency's search failed to produce any responsive documents, a FOIA claim must fail if the search was reasonable in light of the specific request, *Knittel v. I.R.S.*, 795 F. Supp. 2d 713, 718 (W.D. Tenn. 2010) (citing *Meeropol v. Meese*, 790 F.2d

33

942, 956 (D.C. Cir. 1986)), unless the plaintiff can provide evidence demonstrating the agency's bad faith. *Jones v. FBI*, 41 F.3d 238, 242 (6th Cir. 1994).

In his response, Davidson contends that the search was necessarily inadequate because there is no indication that a search was conducted at FMC-Lexington itself. R. 34 at 46-48. Implicit in Davidson's complaint are his unfounded assumptions both that the budgeting documents in question necessarily would have originated at the local prison rather than at the Trust Fund Branch at the BOP's headquarters Washington, D.C., and that any documents which did originate at the local prison would not have been transmitted to the BOP's Central Office.[4]

More fundamentally, the question in a FOIA action is not whether the responding agency could have done more, but whether the search it did conduct was reasonable. Davidson sought information indicating whether trust funds had been spent to improve the officer's dining area at FMC-Lexington, and the BOP's Trust Fund Branch searched its Financial Management Information System, which is "where these records would be maintained or stored," for responsive documents. [R. 20-3 at 2-3, 7-8]   At

---

[4]   Notably, expenditures from funds in the trust are managed centrally in the Trust Fund Branch, not at each facility. BOP Program Statement 4500.11 Ch. 2 § 2.3(c), (c)(4).

bottom, Davidson simply disagrees with the BOP staff charged with maintaining these documents about where they were likely to be found.  Given the strong presumption of good faith to be afforded to an agency's search for records under FOIA, Davidson has failed to demonstrate the BOP's bad faith in responding to his FOIA request.  Davidson's FOIA claim set forth in Count Eight of the complaint will therefore be dismissed.

C

The BOP seeks dismissal of all of the plaintiffs' tort claims seeking damages on the ground of sovereign immunity.  With respect to Jennings and Davidson's complaints about the BOP's administration of the inmate grievance process, the Court will dismiss these claims regardless of the nature of the relief sought.  28 U.S.C. § 1915(e)(2) directs a district court to dismiss a claim "at any time" if it determines that the claim is frivolous or fails to state a claim.  *Hill v. Lappin*, 630 F. 3d 468, 470-71 (6th Cir. 2010).

Davidson and Jennings contend that the BOP has violated their due process rights by taking too long to formally receive their grievances and appeals, by taking too long to respond to them, and by stating incorrectly that required documents have not been included.  As a result, they have incurred extra costs for postage

and office supplies, as well as delays in the resolution of the grievance process. [R. 1 at 10-18, 22-24]

However, it is well-established that inmates have no constitutional right to have a grievance process at all, and thus they have no due process right to one that functions in a manner the inmate deems efficient and timely. *Argue v. Hoffmeyer*, 80 F. App'x 427, 430 (6th Cir. 2003) ("[T]here is no inherent constitutional right to an effective prison grievance procedure.") (citing *Hewitt v. Helms*, 459 U.S. 460, 467 (1983)); *Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir. 1996); *Flick v. Alba*, 932 F.2d 728, 729 (8th Cir. 1991) (federal grievance regulations providing for administrative remedy procedure do not create liberty interest in access to that procedure); *McCalla v. United States*, No. 5: 15-CV-387-JMH, 2016 WL 1698295, at *6 (E.D. Ky. Apr. 27, 2016). The Court will therefore dismiss Davidson and Jennings' due process claims related to the BOP's handling of their grievances set forth in Counts Three and Seven of the complaint.

### D

Jennings and Davidson also assert that they have "a protected property interest in [their] pay and [] eligibility to earn bonus pay," a right they contend was violated by the BOP's reduction in their pay grade in the fall of 2014. [R. 1 at 20, 23] The BOP correctly asserts that inmates have no constitutional right to

either hold a prison job or to be paid any wages for their work.
[R. 20-1 at 9]  Courts have long held that the loss of such a job
or a reduction in pay simply does not constitute the kind of
atypical and significant hardship necessary to implicate due
process concerns under *Sandin v. Conner*, 515 U.S. 472, 484 (1995).
See *Bulger v. United States Bureau of Prisons*, 65 F.3d 48, 50 (5th
Cir. 1995); *Martin v. O'Brien*, 207 F. App'x 587, 590 (6th Cir.
2006); *Newsom v. Norris*, 888 F.2d 371, 374 (6th Cir. 1989); *Carter
v. Tucker*, 69 F. App'x 678, 680 (6th Cir.2003).  The Court will
therefore grant summary judgment to the BOP with respect to the
due process claims asserted by Jennings and Davidson in Counts Two
and Six of the complaint.

**E**

The remaining three claims presented by Jennings and Davidson
are related to the trust funds.  In Count Four, the plaintiffs
allege that they have suffered injury because the BOP has neglected
property purchased with trust funds and used funds to benefit staff
members at the expense of inmates.  In Counts One and Five,
Jennings and Davidson allege that the BOP acted improperly by
transferring trust funds from FMC-Lexington to MARO; they imply
that this transfer either caused a reduction in their pay,

37

prevented them from being or eligible for bonus pay, or both.[5] Davidson and Jennings contend that, through these actions, the BOP violated its duties to them as beneficiaries of the trust fund. [R. 1 at p. 20-23]

To provide subject matter jurisdiction over these claims, the plaintiffs invoke 28 U.S.C. § 1331 and 28 U.S.C. § 1346(a)(2). [R. 1 at 1]  The former provision sets forth the Court's "federal question" jurisdiction; the latter provision is known as the "Little Tucker Act," which provides district courts with jurisdiction over actions against the United States seeking $10,000 or less in damages for claims "founded either upon the Constitution, or any Act of Congress, or any regulation of an executive department …"  Therefore, to state a viable claim and provide a basis for subject matter jurisdiction, the plaintiffs must first identify a federal source of substantive law for their "trust law" claims.

Davidson and Jennings point to 31 U.S.C. § 1321(a)(22), a definitional section which merely states that "[t]he following are

---

[5]   BOP policy actually provides that trust funds which are not presently needed to meet operational expenses at the institution must be deposited into a deposit fund maintained by the Treasury in the name of the BOP (Treasury Account Symbol 15X8408), and/or used to purchase government bonds so that the money can earn interest.  BOP Program Statement 4500.11 Ch. 2 § 2.1a.

classified as trust funds … Commissary funds, Federal prisons…"
The only prescriptive aspect of the section is found in Section
1321(b)(1), which states that:

> Amounts that are analogous to the funds named in
> subsection (a) … and are received by the United States
> Government as trustee shall be deposited in an
> appropriate trust fund account in the Treasury. …
> amounts accruing to these funds are appropriated to be
> disbursed in compliance with the terms of the trust.

Plaintiffs rely exclusively upon this provision to assert that the
BOP owes all inmates fiduciary duties with respect to its
administration of the trust funds. [R. 34 at 24-28 (citing *United
States v. Mitchell*, 463 U.S. 206 (1983)][6]

The BOP responds that following the decision in *Mitchell*,
courts have frequently concluded that federal statutes and rules
do not impose fiduciary obligations, even those characterizing a
relationship as one of "trust" between the parties. [R. 38 at 6
(citing *National Assoc. of Counties v. Baker*, 842 F.2d 369, 375-
76 (D.C. Cir. 1988), *cert. denied*, 488 U.S. 1005 (1989); *Han v.*

---

[6] The BOP correctly notes that *Mitchell* involved the Tucker Act,
28 U.S.C. § 1491(a)(1), which does not supply this Court with
jurisdiction at all. Nor would the Court of Claims have
jurisdiction because claims that "the BOP breached a fiduciary
duty owed to plaintiff as to the administration and management of
his trust fund also sound in tort[,]" *Powers v. United States*,
2015 WL 4931482, at *7 (Cl. Ct. 2015), a type of claim expressly
excluded from the Tucker Act's scope.

*United States Department of Justice*, 45 F.3d 333, 337 (9th Cir. 1995)]

The Court of Claims recently discussed this question at length with respect to the BOP's Trust Fund, which is funded through commissary sales and is at issue here, and concluded unequivocally that 31 U.S.C. § 1321, the statute upon which the plaintiffs rely, does *not* create fiduciary duties:

> [W]hile the Commissary Fund is classified as a "trust" under 31 U.S.C. § 1321(a) (as are some ninety other diverse funds), it is well established that such classification alone is not sufficient to establish that Congress intended to impose specific fiduciary obligations on the United States that would subject it to a claim for monetary damages for their breach.
> …
> Further, the legislative history of § 1321 does not reveal congressional intent to impose any particular fiduciary duties on the government with respect to any of the funds designated as "trust" funds under that statute. … There is no reason to believe that when Congress designated the Commissary Fund as a trust for this specialized purpose it also intended to subject the United States to liability for money damages for breach of fiduciary obligations.
> …
> As contrasted with the monies held in the Prisoner's Trust Fund, the monies in the Commissary Fund do not in any sense belong to the prisoners; in fact, Circular No. 2244 expressly denies inmates any entitlement to the earnings of the Commissary.

*Spengler v. United States*, 127 Fed. Cl. 597, 601-02 (Cl. Ct. 2016).

The Court finds this reasoning thorough and persuasive, and concludes that Section 1321 does not impose fiduciary duties upon

40

the BOP enforceable in an action for legal remedies against it.[7]
The Court will therefore dismiss Counts One, Four, and Five.

### IV

As a final matter, seven months after the BOP filed its motion
for summary judgment in this case and five months after briefing
on that motion was completed, Davidson filed a motion to amend his
complaint to add a second FOIA claim. [R. 46] That claim is based
upon OIP's February 24, 2016 response to his second request for
documents related to inmate pay, the appeal of which was resolved
in OIP's June 17, 2016 letter. [R. 46-1]

The Court will deny the requested amendment for two reasons.
First, FOIA requires that administrative remedies must be
exhausted *before* a party files suit. *Stebbins v. Nationwide Mutual
Insurance Co.*, 757 F.2d 364, 366 (D.C. Cir. 1985). Because
exhaustion is a condition precedent to suit, exhaustion must be
completed in its entirety before suit is filed; it may not be
completed during the pendency of an action. *Oriakhi v. United
States*, 165 F. App'x 991, 993 (3d Cir. 2006). Here, Davidson filed

---

[7] To the extent the plaintiffs seek equitable relief in the form
of an accounting of trust fund expenditures, they do not indicate
that they have sought this information by using the mechanism
expressly provided by the BOP to request financial statements and
annual reports from the Central Office. See BOP Program Statement
4500.11 § 2.2(a).

his initial request only after he filed suit, and his appeal was not resolved until long after. Therefore, Davidson cannot have satisfied the exhaustion requirement to pursue his claims in this proceeding. *Taylor v. Appleton*, 30 F.3d 1365, 1367-68 (11th Cir. 1994). Second, to permit the addition of another claim long after extensive briefing and argument has been completed would be unduly prejudicial to the parties. The Court will therefore deny the requested amendment. Davidson may, of course, pursue his second FOIA claim in a separate proceeding.

Accordingly, it is **ORDERED** as follows:

1. The Plaintiffs' motion to strike the declaration of Alex White [R. 32] is **DENIED**.

2. The Bureau of Prisons' motion to dismiss the complaint, or in the alternative, for summary judgment [R. 20] is **GRANTED**.

3. The Complaint of plaintiffs Clifton Davidson and Alfred Jennings [R. 1] is **DISMISSED WITH PREJUDICE** with respect to all matters asserted therein.

4. The Plaintiffs' motion to amend their complaint [R. 46] is **DENIED**.

5. The Court will enter an appropriate judgment.

6. This matter is **STRICKEN** from the active docket of the Court.

42

This the 31st day of March, 2017.



**Signed By:**

**_Joseph M. Hood_**

**Senior U.S. District Judge**